*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 74**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ADAM MACKLEY,
*Appellant,*

*v.*

ADRIENNE OPENSHAW,
*Appellee.*

COLTON BARNEY,
*Appellee,*

*v.*

ADAM MACKLEY and ADRIENNE BARNEY,[1]
*Appellant* and *Appellee.*

No. 20170001
Heard February 22, 2019
Filed December 19, 2019

On Certification from the Court of Appeals

Fourth District, Provo
The Honorable Darold J. McDade
Nos. 114402136 and 134400322

Attorneys:

Julie J. Nelson, Eric G. Maxfield, Timothy M. Bagshaw,
Salt Lake City, for appellant Adam Mackley

Lorie D. Fowlke, Provo, Sara Pfrommer, North Salt Lake,
for appellee Adrienne Openshaw

Ron D. Wilkinson, Orem, for appellee Colton Barney

---

[1] We list both cases that the court of appeals consolidated so that
all of the concerned parties are listed herein. We note that Adrienne
Openshaw and Adrienne Barney are the same person.

JUSTICE PETERSEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, and JUDGE HARRIS joined.

Having recused himself, JUSTICE PEARCE does not participate herein; COURT OF APPEALS JUDGE RYAN M. HARRIS sat.

———————

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    Adam Mackley conceived a child with Adrienne Openshaw (Mother) while she was married to Colton Barney (Husband). Before the child's birth, Mackley filed a paternity petition in the district court. Genetic testing, conducted after the child's birth, established that the child was Mackley's biological daughter. Husband later signed a voluntary denial of paternity, renouncing his paternity of the child. Despite this, Mother subsequently moved to dismiss Mackley's petition, arguing that he lacked standing under the Utah Uniform Parentage Act (UUPA) to challenge Husband's presumed paternity. Husband simultaneously commenced a separate action, petitioning the district court to declare him to be the child's legal father. After extensive litigation in both cases, the district court permitted Husband to rescind the denial on the basis of mutual and unilateral mistake of fact. The court later granted Husband's petition for declaratory judgment, which ultimately resulted in the dismissal of Mackley's petition.

¶2    We are asked to determine, among other issues, whether the district court erred (1) in allowing rescission of the denial and (2) in holding that Mackley lacked standing to challenge Husband's presumed paternity of the child.[2]

———————

[2] Alternatively, Mackley contends that an interpretation of the UUPA denying him standing violates his constitutional rights to due process and equal protection. These same or similar arguments were raised in several companion cases that we also issue today. *See Castro v. Lemus*, 2019 UT 71, ¶¶ 53, 57, --- P.3d ---; *Hinkle v. Jacobsen*, 2019 UT 72, ¶ 19, --- P.3d ---; *Olguin v. Anderton*, 2019 UT 73, ¶ 18, --- P.3d ---. In *Castro*, we hold that the UUPA grants standing to alleged fathers to rebut the presumption of paternity. 2019 UT 71, ¶¶ 3, 12, 51, 61. And because we adopt an interpretation of the UUPA that grants

(cont'd.)

¶3     We conclude that Husband should not have been permitted to rescind the denial because any mistake went to the legal consequences of signing the document, not the facts forming the basis of it. The issue of Mackley's standing is therefore moot. We reverse and remand.

**BACKGROUND**

¶4     Mother and Husband married in August 2010. In early 2011, Mother had a sexual relationship with Mackley and became pregnant. Before learning of the pregnancy, Mother told Husband about her relationship with Mackley and the couple separated. Although Mother moved out of the marital home, the couple remained married. When Mother subsequently discovered that she was pregnant, she and Husband knew there was a possibility that Mackley was the child's biological father. Despite this, the couple reconciled and worked to mend the marriage.

¶5     After learning of the pregnancy, Mackley began paying prenatal child support to Mother. And he filed a paternity petition in district court before the child was born. Mackley did not name or serve Husband as a party in that case.

¶6     In her answer, Mother asked the district court to dismiss Mackley's petition, stating that she was "not sure who the father is and [did] not remember telling [Mackley] that [the child] was his." Mother then asked the court to allow her and Husband to start their family, declaring that Husband "kn[ew] the whole situation and want[ed] to take full responsibility of the child regardless of DNA." But she noted that Mackley could take the legal steps to get a paternity test if he wanted and that they would "go from there" if he elected to do so.

¶7     The child was born in October 2011. Although present at the birth, Husband was not listed on the child's birth certificate.

¶8     After the child was born, Mackley requested that a paternity test be conducted. Mother submitted herself and the child to genetic testing. The test results established a 99.99 percent probability that the child is Mackley's biological daughter.

¶9     Soon after, Mother and Mackley stipulated to temporary orders addressing, among other things, custody, parent-time, and

standing to alleged fathers, we need not address Mackley's constitutional challenges to a statutory interpretation that does not.

child support. Mackley began to exercise parent-time in December 2011. But increasing conflicts between Mother and Mackley over parent-time and the child's medical care soon strained the relationship.

¶10   As part of the original stipulated temporary orders, Mother had agreed to add Mackley as the father on the child's birth certificate. After some delay, Mackley repeatedly threatened to initiate court proceedings against her if she did not comply with the order. Mother eventually agreed to complete the necessary paperwork. Mackley completed and signed the applicable portion of a Voluntary Declaration of Paternity (declaration).[3] *See* UTAH CODE § 78B-15-302. He gave it to Mother, who took it with her to the Utah County Health Department. Husband accompanied Mother to provide emotional support.

¶11   At the health department, Mother signed the relevant portion of the declaration, in which she affirmed that "[Mackley] is the biological father of th[e] child" and that she was voluntarily

---

[3] The UUPA provides that "The mother of a child and a man claiming to be the genetic father of the child may sign a declaration of paternity to establish the paternity of the child." UTAH CODE § 78B-15-302(1). A man who establishes his paternity in this manner is called a "declarant father." § 78B-15-102(8). The declaration of paternity must be signed, or otherwise authenticated, by both the mother and the declarant father. *Id.* § 78B-15-302(1)(b). And if the child has a presumed father, as here, the presumed father must sign, or otherwise authenticate, a denial of paternity in order for the declaration of paternity to be valid. *Id.* §§ 78B-15-302(3)(a), -303, -304. When both are required, a declaration of paternity and a denial of paternity must be contained in a single document, and neither is valid until both are signed and filed according to statute. *Id.* § 78B-15-304(1). Once filed, a valid declaration of paternity "is equivalent to a legal finding of paternity of a child and confers upon the declarant father all of the rights and duties of a parent." *Id.* § 78B-15-305(1). The declaration of paternity then becomes an amendment to the child's original birth certificate. *See id.* § 78B-15-302(7).

Here, there are some inconsistencies in the record regarding when the parties signed the declaration and denial. However, it is clear that Mother, Husband, and Mackley each signed the sections of the form relevant to him or her as prescribed by law.

providing the information "to formally declare the paternity of their child without obtaining a court order." In addition, Mother affirmed that she "ha[d] been provided verbal and written notice of the legal consequences of and the alternatives to signing [the declaration]."

¶12   When an employee of the health department discovered that Husband was married to Mother, he was asked to sign a portion of the form. Husband had been unaware that he would be asked to sign any documents, but he complied. He signed a section of the form labeled in all capital letters: "DENIAL OF PATERNITY BY PRESUMED FATHER."[4] In doing so, Husband affirmed, under penalty of perjury, "<u>I am recognized as the</u> 'presumed father'[5] under Utah Law; however . . . I am **NOT THE BIOLOGICAL FATHER OF THE CHILD ON PAGE ONE OF THIS DOCUMENT**." (Emphasis in original.) Like Mother, Husband also affirmed that he had "been provided verbal and written notice of the legal consequences of and the alternatives to signing this form." Mackley was not informed that Mother had signed the declaration or that Husband had signed the denial.

¶13   Several months later at a pretrial hearing, the district court questioned why Mackley had not joined Husband in the case. Citing court of appeals' precedent, the district court reasoned that Husband, the child's presumed father, was likely an indispensable party. The court then decided to continue the hearing to allow time for the parties to investigate that issue.

---

[4] The form the parties signed cites to an obsolete section of the Utah Code. Utah Code section 78-45g-204 was renumbered as section 78B-15-204 in 2008. The parties signed the form in 2012, but the form still listed the old section number.

[5] The denial includes a definition of "presumed father." It states that a man is presumed to be the father of a child if:

(a) he and the mother of the child are married to each other and the child is born during the marriage;

(b) he and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce or after a decree of separation; [or]

(c) after the birth of the child, he and the mother of the child married each other.

¶14 Mother subsequently moved to dismiss Mackley's paternity petition, arguing that he lacked standing to challenge the child's paternity under the UUPA[6] and that he had failed to join an indispensable party, Husband, the child's presumed father. In the alternative, Mother asked the district court to determine that Mackley lacked standing to assert his paternity of the child under the common-law test adopted in *In re J.W.F. (Schoolcraft)*, 799 P.2d 710 (Utah 1990).

¶15 That same week, Husband petitioned for declaratory judgment in a separate case, asking the district court to declare that he is the child's legal father and that Mackley therefore has no parental rights. In addition, Husband requested that the district court order his name to be substituted for Mackley's on the child's birth certificate, which would require Mackley to withdraw the declaration.[7] Husband, Mother, and Mackley are all parties to Husband's case. Neither Mother's motion to dismiss nor Husband's petition for declaratory judgment mentioned that she had signed the declaration or that Husband had signed the denial.

¶16 The district court held a hearing for both cases. Because Husband had never been joined as a party to Mackley's case, the court stayed Mackley's paternity petition, pending resolution of Husband's petition for declaratory relief (the case to which Mother, Husband, and Mackley were all parties). The court then orally declared that Husband, as the presumed father, was the child's legal father and stated that its ruling would have res judicata effect on Mackley's case.

---

[6] At the time Mother moved to dismiss Mackley's petition for lack of standing, the court of appeals had yet to issue its decision in *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084 (interpreting the UUPA to deny standing to alleged fathers when the child is born during a marriage and has a presumed father). Mother acknowledged that her interpretation of the UUPA was an issue of first impression but argued in favor of construing the statute to deny standing based on the policy considerations outlined in *In re J.W.F. (Schoolcraft)*, 799 P.2d 710 (Utah 1990).

[7] *See* UTAH CODE § 78B-15-308(5) ("At the conclusion of a proceeding to rescind or challenge a declaration of paternity or denial of paternity, the tribunal shall order the Office of Vital Records to amend the birth record of the child, if appropriate.").

¶17 After that hearing, Mackley discovered, for the first time, that Husband had signed the denial, which had the legal effect of denying Husband's presumed paternity of the child. Based on this discovery, Mackley moved the district court for relief from judgment under rule 60(b) of the Utah Rules of Civil Procedure, arguing, among other things, that the denial constituted newly discovered evidence.

¶18 Without addressing Mackley's rule 60(b) motion, the district court entered findings of fact, conclusions of law, and an order of declaratory judgment in Husband's case. The order recognized Husband as the child's legal father, determined that Mackley had no parental rights, and ordered Husband's name to be substituted for Mackley's on the child's birth certificate and other legal documents.

¶19 The district court subsequently dismissed Mackley's paternity petition. In doing so, the court struck the temporary orders, determined that Mackley lacked standing to file a paternity petition, and concluded that Husband was a necessary party who the court had determined was the child's legal father.

¶20 Mackley appealed the district court's rulings. The court of appeals then ordered the district court to hear and rule on Mackley's rule 60(b) motion. After conducting a hearing, the district court granted Mackley's motion for relief from judgment, ruling that the denial constituted newly discovered evidence. The court thus vacated both its order granting declaratory judgment in favor of Husband and its dismissal of Mackley's paternity petition.

¶21 Several days before the district court issued its written order, Husband moved to rescind the denial. He argued that it should be rescinded based on material mistakes of fact and duress. After an evidentiary hearing, the district court granted Husband's motion to rescind on the basis of mutual and unilateral mistake of fact. In particular, the court found that none of the parties were aware that Husband would be required to sign the denial and all three parties believed "the purpose of signing the form was to add [Mackley] to the birth certificate" and that "[n]one of the parties anticipated that signing the form would legally terminate [Husband's] parental rights as the presumed father." In support, the district court noted that the form does not indicate that by signing it, the presumed father is terminating his rights to the child.

¶22 Mother and Husband then moved the district court to reinstate its order for declaratory judgment in Husband's case and

its order of dismissal in Mackley's case. The court granted the motions.

¶23 Mackley filed two notices of appeal with the court of appeals. He first appealed the district court's December 21, 2016 order of dismissal entered in his case. He then appealed two orders entered in Husband's case: the district court's March 15, 2016 order rescinding the denial and its October 22, 2016 order reinstating declaratory judgment. On its own motion, the court of appeals consolidated the cases. That court later certified the consolidated case to us to resolve unsettled questions of constitutional law.

¶24 We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(b).

### STANDARD OF REVIEW

¶25 "The issue of mistake of fact involves factual determinations and conclusions of law. We review factual determinations for clear error and conclusions of law for correctness." *Deep Creek Ranch, LLC v. Utah State Armory Bd.*, 2008 UT 3, ¶ 10, 178 P.3d 886.

### ANALYSIS

### I.   MOTION TO STRIKE

¶26 Before addressing the merits of Mackley's arguments, we must resolve a motion to strike portions of Mackley's replacement brief filed by Husband and joined by Mother. In support, Husband and Mother note that in his opening brief to the court of appeals, Mackley did not include Husband on the caption or service list. When Mother's attorney asked why Husband's attorney had not been served a copy of the brief, Mackley responded by emailing one to him. Mackley then moved to amend the caption page and certificate of service, which the court of appeals granted. Husband requested that the court of appeals vacate that order, arguing that Mackley's briefing contained more than "technical" errors because Mackley had not attached the relevant order from Husband's case. According to Husband, this failure meant that Husband was not a party to the appeal and that the requested amendments could not cure that defect. The court denied Husband's request to vacate its prior order.

¶27 After the court of appeals certified the consolidated case to us, we issued an order allowing the parties to submit replacement

briefs. All of the parties did so.[8] Mackley's replacement brief included Husband on the caption page and certificate of service. It also attached the relevant orders from Husband's case as addenda. Husband and Mother acknowledge that Mackley corrected these procedural errors in his replacement brief, but they argue that doing so violated our replacement briefing order. That order stated that the parties could elect to submit replacement briefs "if the posture before the [s]upreme [c]ourt creates a material difference in the argument presented." It went on to explain that the order should "not be construed to excuse compliance with otherwise-applicable principles or rules of appellate review (e.g., preservation in the trial court)."

¶28 We conclude that Husband and Mother have failed to demonstrate that they were prejudiced by any of Mackley's alleged errors. After Mother's counsel asked why Husband's counsel had not been served a brief, Mackley emailed him a copy. Mackley then moved the court of appeals to amend the caption and service list on his original brief, which the court granted. After the case was certified to this court, Mackley attached the relevant orders from both cases as addenda to his replacement brief—orders that had been included in the notice of appeal that Mackley filed in Husband's case.

¶29 Husband and Mother have not cited any rule or case law that these procedural errors require striking Mackley's replacement brief. Indeed, the only case law they cite relates to reply, not replacement, briefs. Yet the parties have not explained how the issues presented in those cases are analogous to the one at hand. We conclude that any alleged procedural errors have been rectified and are thus harmless. Accordingly, we deny the motion to strike.

## II. VOLUNTARY DENIAL OF PATERNITY

¶30 Mackley contends that the district court erred in allowing Husband to rescind the denial under theories of mutual and unilateral mistake of fact. Specifically, he argues that the mistake cited by the district court was not a mistake of fact but rather a mistake regarding the legal consequences of signing the declaration and denial. We agree.

¶31 Relevant here, under the UUPA a presumed father may move to rescind a voluntary denial of paternity by filing a rescission document within sixty days after the effective date of the denial.

---

[8] Mother filed a replacement brief, which Husband joined.

UTAH CODE § 78B-15-306(1)(a). "After the period for rescission under Section 78B-15-306 has expired," as occurred here, "a signatory of a declaration of paternity or denial of paternity . . . may commence a proceeding to challenge the declaration or denial only on the basis of fraud, duress, or material mistake of fact." *Id.* § 78B-15-307(1).

¶32   Husband moved to rescind the denial under theories of duress and material mistake of fact. Without addressing duress, the district court concluded that the denial should be rescinded due to mutual and unilateral mistakes of fact.

¶33   A party seeking to rescind an agreement based on a mutual mistake of fact must show, by clear and convincing evidence, that "both parties, at the time of contracting, share[d] a misconception about a *basic assumption or vital fact* upon which they based their bargain." *Bergmann v. Bergmann*, 2018 UT App 130, ¶ 14, 428 P.3d 89 (emphasis added) (citation omitted) (internal quotation marks omitted); *see also* UTAH CODE § 78B-15-112 ("The standard of proof in a trial to determine paternity is 'by clear and convincing evidence.'"); *id.* § 78B-15-307(2) ("A party challenging a declaration of paternity or denial of paternity has the burden of proof."). A mutual mistake "can provide the basis for equitable rescission" of an agreement "even when the contract appears on its face to be a 'complete and binding integrated agreement.'" *Burningham v. Westgate Resorts, Ltd.*, 2013 UT App 244, ¶ 12, 317 P.3d 445 (citation omitted).

¶34   As to mutual mistake, in its order granting Husband's motion to rescind the denial, the district court found that Mother, Husband, and Mackley were all unaware that Husband would be required to sign the denial. Furthermore, it found that they all shared the mistaken belief that the purpose of signing the declaration and denial was to add Mackley's name to the child's birth certificate, not declare Mackley's paternity of the child and thereby terminate Husband's legal rights as the presumed father. According to the court, the parties were mistaken about the legal consequences of signing the form because the form failed to clearly state them and because Husband's mistaken belief that he was preserving his rights as the presumed father was reinforced by an employee of the health department. The court thus determined that none of the parties intended for the declaration and denial to have the effect that they did.

¶35   In addition, the district court noted that permitting Husband to terminate his fundamental rights to the child without that waiver being knowing and intentional would be inconsistent with Utah law. (Citing UTAH CODE § 78A-6-514(3).) The court then

concluded that the circumstances surrounding the execution of the denial demonstrated that Husband had not knowingly and voluntarily waived his parental rights.

¶36   A party may also rescind an agreement based on unilateral mistake of fact. To do so, the rescinding party must establish four elements: (1) that the mistake is "of so grave a consequence" that it would be "unconscionable" to enforce the contract as it was made; (2) that the mistake was made as to a matter that "relate[s] to a material feature of the contract"; (3) that the mistake "occurred notwithstanding the exercise of ordinary diligence by the party making the mistake"; and (4) that rescission will not "serious[ly] prejudice" the other party other than "the loss of his bargain." *Briggs v. Liddell*, 699 P.2d 770, 773 (Utah 1985); *see also John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1209–10 (Utah 1987).

¶37   As to unilateral mistake, the district court determined that despite exercising ordinary diligence of a person of his education and experience, Husband was mistaken as to the legal consequences of the denial. In so concluding, the court found that Husband was not provided any verbal or written notice that signing the denial would result in a relinquishment of his parental rights and that the advice given by the health department employee had misled him. Based on those circumstances, the court concluded that enforcing the denial would be unconscionable and that rescinding it would not result in prejudice to Mackley. Accordingly, the court granted Husband's motion to rescind.

¶38   We hold that the district court erred in allowing Husband to rescind the denial because any mistake (mutual or unilateral) related to the legal consequences of signing the form, not to any underlying facts. The premise of both of these equitable rescission doctrines is that they relate to mistakes of fact, not law. And under Utah law, "each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense." *John Call Eng'g, Inc.*, 743 P.2d at 1208.

¶39   This analysis applies here even though a voluntary declaration of paternity is not a typical contract between two parties. Here, the legal consequences of Husband signing the denial arise both from the language on the form and from the Utah Code. The UUPA provides that once executed and filed, a declaration of paternity "is equivalent to a legal finding of paternity of a child and confers upon the declarant father all of the rights and duties of a

parent." UTAH CODE § 78B-15-305(1). While we agree that the form could be updated to clarify its contents and legal consequences to signatories,[9] Husband had a duty to read and understand the form he was signing. The form advises signatories that they should be "provided verbal and written notice of the legal consequences of and the alternatives to signing" the form. The court essentially found that Husband did not understand the legal consequences of the denial or its meaning under section 78B-15-305(1). But ignorance of controlling law and the legal effect of signing the form are not mistakes of fact. The sole mistake that seems factual is whether or not Husband actually did receive that verbal or written notice from the health department employee. But in signing the denial, Husband affirmed that he had. If he had not received the notice, Husband had the burden to inquire further or consult with legal counsel. He cannot claim ignorance as to the legal consequences of signing the denial. We therefore reverse Husband's rescission of the denial and remand to the district court.

## III. STANDING

¶40 Mackley contends that the district court erred when it denied him standing to challenge Husband's presumed paternity under the UUPA and the common-law *Schoolcraft* test.[10] However, this issue is now moot. Because we conclude that the district court erred in allowing Husband to rescind the denial, it remains in effect and functions as the equivalent of "a legal finding of the

---

[9] Our holding should not be construed as approval of the form used in this case. Given the significant legal consequences to signatories of a declaration and denial of paternity, we are persuaded that efforts should be made to improve the clarity of the form. For instance, even though the definition of "presumed father" was not altered when the UUPA was renamed and renumbered, it is concerning that the form had not been updated to reflect the correct section of the statute.

[10] Mother and Husband argue that although the district court referenced *Schoolcraft*, it actually applied Utah Code section 78B-15-608, which they argue is modeled after the policy considerations set out in *Schoolcraft*. We are not persuaded. It is clear from the district court's order that it was applying *Schoolcraft*, which has been preempted by the UUPA. Accordingly, we conclude that any reliance on the prior common-law test was erroneous.

nonpaternity of the presumed … father," *see* UTAH CODE § 78B-15-305(3), and, correspondingly, "establish[es] [Mackley's] paternity of the child" as the declarant father, *see id.* §§ 78B-15-301, -302(1)(f).

¶41    However, we note that even if we were to conclude that the denial was properly rescinded, Mackley would nevertheless have standing. In a companion case that also issues today, *Castro v. Lemus*, we hold that the UUPA grants standing to alleged fathers like Mackley. 2019 UT 71, ¶¶3, 12, 51, 61, --- P.3d ---.

## CONCLUSION

¶42    We conclude that the district court erred in allowing Husband to rescind the denial under theories of mutual and unilateral mistake of fact. Husband's denial thus remains in effect. Mackley's argument regarding standing is moot, but we note that our holding in *Castro v. Lemus*, 2019 UT 71, --- P.3d ---, which also issues today, would confer standing upon him in the absence of the denial. Accordingly, we vacate the order allowing for rescission and remand to the district court for further proceedings consistent with this opinion.

—————————