*This opinion is subject to revision before final*
*publication in the Pacific Reporter*

**2019 UT 71**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

OSCAR CASTRO,
*Appellant,*

*v.*

MARI TERESA LEMUS,
*Appellee.*

No. 20180094
Heard February 22, 2019
Filed December 19, 2019

On Certification from the Court of Appeals

Fourth District, Provo
The Honorable Lynn W. Davis
No. 174401943

Attorneys:[1]

Troy L. Booher, Julie J. Nelson, Michael J. Teter, Salt Lake City,
Dustin A. Hardy, Orem, for appellant

Aaron M. Drake, Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

---

[1] Amicus Curiae attorneys are:

Sean D. Reyes, Att'y Gen., Andrew Dymek, Asst. Att'y Gen.,
Tyler R. Green, Solic. Gen., Stanford E. Purser, Deputy Solic. Gen.,
Salt Lake City, for State of Utah.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 Appellant Oscar Castro seeks to establish his paternity of a child born to Mari Teresa Lemus (Mother), who is married to another man (Husband). Castro contends that he is the biological father of the child. But because Mother was married when the child was born, the Utah Uniform Parentage Act (UUPA)[2] presumes that her husband is the child's father. Castro filed a petition in the district court to rebut this legal presumption. The district court dismissed Castro's paternity petition, applying court of appeals' precedent to determine that Castro has no standing under the UUPA because the child was born during a marriage with a presumed father. *See generally R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084.

¶2 On appeal, Castro argues that the court of appeals' interpretation of the UUPA is incorrect. Alternatively, he contends that if the UUPA does deny him standing, it is unconstitutional.

¶3 We conclude that section 78B-15-602 of the UUPA grants standing to Castro and the other persons and entities listed in that provision and that subsection 607(1) does not revoke that standing when the child has a presumed father. Accordingly, we reverse and remand.

## BACKGROUND[3]

¶4 Mother married Husband in 2012. Early in the marriage, Husband traveled to Mexico to visit his mother, who had fallen ill. Because he was later unable to return to Utah, Mother would travel to and from Mexico periodically to be with Husband.

¶5 Mother and Husband separated two years later, and she returned to Utah while he remained in Mexico. Soon thereafter, Mother began dating Castro. Their relationship lasted approximately two years, during which time they conceived a child.

---

[2] The Utah Uniform Parentage Act is set out in Utah Code sections 78B-15-101 to -902.

[3] "On appeal from a motion to dismiss, we must accept the factual allegations in the complaint as true and view all reasonable inferences from them in the light most favorable to the plaintiff." *Pang v. Int'l Document Servs.*, 2015 UT 63, ¶ 3, 356 P.3d 1190 (citation omitted).

¶6 But in May 2016, Husband returned to Utah and he reconciled with Mother. The child was born to Mother in December that same year. Mother and Husband have remained married and neither spouse has ever initiated divorce proceedings. Mother and Husband allege that they have fulfilled all parental roles for the child since birth, and they desire to continue to do so free from Castro's interference.

¶7 But Castro wants to establish himself as the child's legal father. To do so, Castro filed a petition in the district court to challenge Husband's presumed paternity; assert his own parentage; and establish custody, child support, and parent-time. In response, Mother filed a rule 12(b)(6) motion to dismiss for failure to state a claim. Relying on the court of appeals' decision in *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084, and its progeny, Mother argued that subsection 78B-15-607(1) of the UUPA denies Castro standing to challenge the presumption of paternity established under subsection 204(1)(a).

¶8 In his opposition to Mother's motion to dismiss, Castro conceded that *R.P. v. K.S.W.* is binding upon the district court and limits standing as to who may challenge the presumption of paternity. But he argued that such a limitation violates his constitutional rights to procedural and substantive due process and equal protection.

¶9 Following a hearing on the motion to dismiss, the district court dismissed Castro's paternity petition. Relying on court of appeals' precedent, the district court reiterated that the UUPA purposefully subordinates the judiciary's truth-seeking function to policy concerns about protecting a marriage from third-party challenges. The court also concluded that Castro had failed to overcome the presumption that the UUPA is constitutional.

¶10 Castro timely appealed from the district court's final ruling on the motion to dismiss. The court of appeals certified the case to this court to review unsettled constitutional questions regarding the UUPA. We exercise jurisdiction under Utah Code section 78A-3-102(3)(b).

**STANDARD OF REVIEW**

¶11 "We review the grant of a motion to dismiss for correctness, granting no deference to the decision of the district court." *Hudgens v. Prosper, Inc.*, 2010 UT 68, ¶ 14, 243 P.3d 1275. A rule 12(b)(6) motion to dismiss for failure to state a claim should be granted only if "assuming the truth of the allegations in the

complaint and drawing all reasonable inferences therefrom in the light most favorable to the plaintiff, it is clear that the plaintiff is not entitled to relief." *Id.* (citation omitted). "The interpretation and constitutionality of a statute are questions of law that we review for correctness." *Waite v. Utah Labor Comm'n*, 2017 UT 86, ¶ 5, 416 P.3d 635.

## ANALYSIS

¶12   Castro argues that the court of appeals has incorrectly interpreted the UUPA to deny standing to alleged fathers when the child is conceived or born during a marriage between the mother and another man who is legally presumed to be the child's father. In the alternative, he argues that if we conclude the UUPA does deny him standing, the statute is unconstitutional for a number of reasons. Because we agree with Castro that the UUPA grants standing to alleged fathers in these circumstances, we do not reach his constitutional claims.

## I. STATUTORY INTERPRETATION

¶15   The initial question before us is whether the UUPA grants standing to biological fathers—termed "alleged fathers"[4] in the statute—when another man is legally presumed to be the child's father. Castro argues that the UUPA clearly grants him standing. Mother argues it clearly does not.

¶16   The court of appeals addressed this question in *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084. In *R.P.*, a married woman conceived a child during an extramarital affair. *Id.* ¶ 2. After she informed the alleged father of the pregnancy as well as her intent to remain married, the alleged father filed a petition to establish paternity. *Id.* Initially, the mother admitted that the alleged father was the child's biological father, and they entered into a stipulated agreement regarding child support, parent-time, and joint legal custody. *Id.* ¶¶ 2–3. But when the alleged father later requested increased parent-time, the mother moved to set aside the agreement and dismiss the case, arguing, among other things, that the alleged father lacked standing to challenge the child's paternity. *Id.* ¶ 3. The

---

[4] "'Alleged father' means a man who alleges himself to be, or is alleged to be, the genetic father or a possible genetic father of a child, but whose paternity has not been determined." UTAH CODE § 78B-15-102(2).

4

district court agreed that the alleged father lacked standing and dismissed the case. *Id.*

¶17 The court of appeals affirmed that ruling. *Id.* ¶¶ 1, 45. After analyzing the relevant statutory provisions, it concluded that they were ambiguous as to who had standing to rebut the presumption of paternity. *Id.* ¶¶ 15–17. So the court looked to the UUPA's legislative history and policy objectives. *Id.* ¶¶ 18–26. Ultimately, the court of appeals concluded the UUPA denied standing to the alleged father to assert his paternity while the mother's marriage to the presumed father remained intact. *Id.* ¶ 26.

¶18 This is a matter of first impression for this court. We conclude that the UUPA does grant an alleged father standing to assert his paternity, even where, as here, the child has a presumed father.

¶19 When interpreting a statute, our primary objective "is to ascertain the intent of the legislature." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (citation omitted). Because "[t]he best evidence of the legislature's intent is the plain language of the statute itself," we analyze that first. *Id.* (alteration in original) (citation omitted). In doing so, "[w]e read the plain language of the statute as a whole[] and interpret its provisions in harmony with other statutes in the same chapter and related chapters." *Miller v. Weaver*, 2003 UT 12, ¶ 17, 66 P.3d 592. Accordingly, we begin by looking at the text of the UUPA.

¶20 The UUPA governs "determinations of parentage in this state." UTAH CODE § 78B-15-103(1). "'Determination of parentage' means the establishment of the parent-child relationship," *id.* § 78B-15-102(9), which is "the legal relationship between a child and a parent of the child," *id.* § 78B-15-102(18). The term "[p]arent-child relationship" includes "the mother-child relationship and the father-child relationship." *Id.* (internal quotation marks omitted).

¶21 Establishing the mother-child relationship is usually a straightforward matter because the mother has given birth to the child.[5] *Id.* § 78B-15-201(1)(a)(i) (establishing a mother-child

---

[5] We note, however, that the mother-child relationship can also be established through a gestational agreement, adjudication, adoption, or an unrebutted presumption of maternity. *See id.* § 75B-15-201(1)(a)(ii)–(v).

relationship by "the woman's having given birth to the child"). But because this is not the case for the father, Utah law creates a presumption that a married mother's husband is the father of the child if the child is born during the marriage. *See id.* § 78B-15-204(1)(a). This presumption is rebuttable. A "[p]resumed father" is defined in the UUPA as "a man who, by operation of law under [s]ection 78B-15-204, is recognized as the father of a child *until that status is rebutted or confirmed as set forth in this chapter.*" *Id.* § 78B-15-102(20) (emphasis added) (internal quotation marks omitted).

¶22 When no presumption of paternity exists, Utah law recognizes other pathways to establish paternity. Under the UUPA, the father-child relationship can be established in a number of ways, including by a legal declaration of paternity (declarant father), an adjudication of paternity (adjudicated father), or adoption. *See id.* § 78B-15-201(2)(b)–(d).

### A. Section 602 – the UUPA's Standing Provision

¶23 The UUPA explicitly identifies the parties with standing to maintain a proceeding to adjudicate the parentage of a child. Specifically, Utah Code section 78B-15-602, titled "Standing to maintain proceeding," provides:

> Subject to Part 3, Voluntary Declaration of Paternity Act, and Sections 78B-15-607 and 78B-15-609, a proceeding to adjudicate parentage may be maintained by:
>
> (1) the child;
>
> (2) the mother of the child;
>
> (3) a man whose paternity of the child is to be adjudicated;
>
> (4) the support-enforcement agency or other governmental agency authorized by other law;
>
> (5) an authorized adoption agency or licensed child-placing agency;
>
> (6) a representative authorized by law to act for an individual who would otherwise be entitled to maintain a proceeding but who is deceased, incapacitated, or a minor; or
>
> (7) an intended parent under Part 8, Gestational Agreement.

¶24 Castro argues section 602 definitively answers the question before us. This specific standing provision explicitly grants standing to "a man whose paternity of the child is to be adjudicated." *Id.* § 78B-15-602(3). An alleged biological father such as Castro arguably falls within this broad category, and he would therefore have standing to bring a paternity proceeding under the UUPA.

### B. *Section 607 — Limitations in Proceedings in which the Child has a Presumed Father*

¶25 If our analysis were to end here, the question of Castro's standing would be straightforward. But the UUPA's standing provision is expressly "[s]ubject to Part 3, Voluntary Declaration of Paternity Act, and Sections 78B-15-607 and 78B-15-609." *Id.* § 78B-15-602. Mother argues that subsection 607(1) takes back some of the standing that section 602 grants. Subsection 78B-15-607(1) reads:

> § 78B-15-607. Limitation—Child having presumed father
>
> (1) Paternity of a child conceived or born during a marriage with a presumed father, as described in Subsection 78B-15-204(1)(a), (b), or (c),[6] may be raised by the presumed father, the mother, or a support

---

[6] Under Utah Code section 78B-15-204(1), "[a] man is presumed to be the father of a child if":

> (a) He and the mother of the child are married to each other and the child is born during the marriage;
>
> (b) He and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation; [or]
>
> (c) Before the birth of the child, he and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce or after a decree of separation . . . .

enforcement agency at any time before filing an action for divorce or in the pleadings at the time of the divorce of the parents.

¶26  Mother construes this language to mean that when a child is "conceived or born during a marriage with a presumed father," paternity may be challenged only by the mother, the presumed father, or a support enforcement agency. In other words, she asserts that this provision takes away standing from the other persons and entities listed in section 602 when a presumed father exists (as described in subsections 204(1)(a), (b), and (c)).

¶27  In *R.P.*, the court of appeals concluded that subsection 607(1) was ambiguous. 2014 UT App 38, ¶¶ 15–17. It identified two possible readings. *Id.* ¶ 16. Under the first reading, "[A]ll of the persons listed in section 602 have standing to challenge that child's paternity at any time, except the presumed father and the mother, who may do so only prior to filing an action for divorce or in the divorce pleadings." *Id.* Under the second reading, "[S]ection 607 limits the right to raise the child's paternity to the two persons listed: the presumed father and the mother."[7] *Id.* In support of this reading, the court found the language "[p]aternity . . . may be raised by . . . ." to signal a standing limitation. *Id.* ¶ 19 (quoting UTAH CODE § 78B-15-607(1)). But the court ultimately concluded both readings were plausible and looked to the UUPA's legislative history and policy objectives to break the tie. *Id.* ¶¶ 18–26. Those sources persuaded the court to adopt the second interpretation, thus limiting standing under the UUPA to only the mother and presumed father when a presumed father exists. *Id.*

¶28  Castro disagrees with the interpretation of subsection 607(1) advanced by Mother and previously adopted by the court of

---

[7] In 2017, after *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084, issued, the legislature amended subsection 78B-15-607(1) to also include "a support enforcement agency" as one of the parties allowed to challenge a child's paternity "at any time before filing an action for divorce or in the pleadings at the time of the divorce of the parents." So, in 2014, the court of appeals' interpretation of subsection 607(1) limited standing to the mother and presumed father. *See R.P.*, 2014 UT App 38, ¶ 26. Now, Mother's similar interpretation of subsection 607(1) limits standing to the mother, presumed father, and a support enforcement agency.

appeals. He argues that section 602 identifies those with standing under the UUPA, and subsection 607(1) does nothing to alter that. Instead, he asserts that it merely establishes a deadline to challenge paternity if a mother and presumed father divorce, which applies only to the parties whose interests are adjudicated in the divorce proceeding: the mother, the presumed father, and a support enforcement agency.

¶29   As we outlined above, Castro is correct that section 602 is the UUPA's specific standing provision. But because the standing provision is "[s]ubject to" three other parts of the UUPA, including section 607, the question presented here is whether subsection 607(1) operates to modify the standing granted in section 602.[8] We conclude that it does not.

¶30   First, subsection 607(1) never expressly limits standing. The section is titled "Limitation," not "Standing Limitation." And it contains no clear language limiting standing. It does not say: "If a child has a presumed father . . . only the mother, the presumed father, or a support enforcement agency may initiate a proceeding to adjudicate the parentage of that child."

¶31   In contrast, another section of the UUPA does contain express language where the legislature intended to limit standing. Appearing just before the disputed provision, section 606 states that "[a] proceeding to adjudicate the parentage of a child having no declarant or adjudicated father may be commenced at any time. *If initiated after the child becomes an adult, only the child may initiate the proceeding.*" (Emphasis added.) This language unequivocally limits standing to the child once the child becomes an adult. In comparison, subsection 607(1) contains no such language.

¶32   Short of such unequivocal language, subsection 607(1) might have signaled a standing limitation if the first sentence ended after "enforcement agency," to read: "Paternity of a child conceived or born during a marriage with a presumed father . . . may be raised by the presumed father, the mother, or a support enforcement agency."

---

[8] Mother has not argued that either of the other parts of the UUPA to which section 602 is subject—part 3 and section 609—affect standing here.

¶33   But the sentence does not end there. It goes on to direct *when* the three listed parties may raise the issue of paternity. Specifically, the language states that when a child was conceived or born during a marriage, and therefore a presumed father exists, the mother, the presumed father, or a support enforcement agency may raise paternity "at any time before filing an action for divorce or in the pleadings at the time of the divorce of the parents." UTAH CODE § 78B-15-607(1). This timing directive becomes the substantive focus of the provision.

¶34   Ultimately, subsection 607(1) is silent as to the other persons and entities with standing under section 602—it does not set timing limitations for them, and it also does not speak to their standing. It simply does not address them at all. We do not read this silence to revoke the standing expressly granted to the persons and entities listed in section 602, which specifically addresses standing under the UUPA. Rather, we read subsection 607(1) to mean only what it expressly states: that the mother, the presumed father, or a support enforcement agency may raise the issue of paternity at any time, but if there is a divorce, they must raise it either before a divorce petition is filed or in the divorce pleadings.[9]

---

[9] The court of appeals was concerned that this reading allows

> all other persons identified in section 602 to challenge the paternity of a child with a presumed father at any time but restrict[s] a challenge by the presumed father and the mother to any time prior to the filing of a divorce action or in the pleadings at the time of divorce.

*R.P.*, 2014 UT App 38, ¶ 24. But for reasons of estoppel and finality, this timing limitation makes sense. Notably, if the mother and presumed father do not divorce, the UUPA places no time limit on them. But if they do divorce, the district court must adjudicate issues related to any children of the marriage—custody, parent-time, and child support—as part of that proceeding. The question of paternity precedes those issues. Subsection 607(1) requires those whose interests are to be adjudicated in a divorce proceeding to raise the issue of paternity either up front or never. In practice, this means that if either parent is dissatisfied with a court order regarding custody, parent-time, or child support, he or she cannot later collaterally attack that order by arguing for the first time that the

(cont'd.)

¶35   Second, looking at subsection 607(1) within the structure of the statute as a whole, it becomes even clearer that it should be read as a limitation on timing, not standing. Nearby sections with similar structures are titled "No limitation" or "Limitation," and it is apparent that the word "limitation" refers to timing limitations within those provisions, not standing limitations.

¶36   For example, section 606 states:

§ 78B-15-606. *No limitation*—Child having no declarant or adjudicated father

A proceeding to adjudicate the parentage of a child having no declarant or adjudicated father *may be commenced at any time*. If initiated after the child becomes an adult, only the child may initiate the proceeding.

(Emphases added.)

¶37   The title "No limitation" must refer to timing—specifically that when a child has no declarant or adjudicated father, there is no limitation on *when* a paternity proceeding may be raised. It "may be commenced at any time." *Id.* § 78B-15-606. "No limitation" cannot refer to standing, which is clearly limited in the second sentence to the child once he or she becomes an adult.

¶38   The other section cross-referenced in the standing provision, section 609(1), states:

§ 78B-15-609. *Limitation*—Child having declarant father

(1) If a child has a declarant father, a signatory to the declaration of paternity or denial of paternity or a support-enforcement agency *may commence a proceeding* seeking to rescind the declaration or denial or challenge the paternity of the child *only within the time allowed under Section 78B-15-306 or 78B-15-307*.

(Emphases added.)

---

husband is not really the child's father. While the same estoppel concerns do not necessarily apply to support enforcement agencies, such agencies frequently intervene in divorce cases and their interests are adjudicated in those proceedings. So, the inclusion of support enforcement agencies in this provision promotes finality and consistency in divorce decrees.

¶39   As in section 606, "[l]imitation" here refers to timing limitations—specifically, those time limits established in sections 78B-15-306 and -307. Those sections appear in part 3 of chapter 15,[10] which deals with voluntary declarations or denials of paternity. *See id.* § 78B-15-301, -303. Section 306(1) allows a person to rescind a declaration or denial of paternity but only within two specified timeframes.[11] And section 307 provides that if a signatory or a support enforcement agency misses those deadlines, a proceeding to challenge the declaration or denial may be commenced "only on the basis of fraud, duress, or material mistake of fact." *Id.* § 78B-15-307(1).

¶40   Thus, section 609(1) closes a potential loophole by applying the deadlines set out in subsection 306(1) for rescinding a declaration or denial of paternity to proceedings under the UUPA that involve a child with a declarant father. As in subsection 607(1), this makes sense based on principles of estoppel. If a man has either declared or denied that he is a child's father, the UUPA gives him a period of time in which to rescind his declaration or denial of paternity, but it restricts his ability to do so after an adjudicative proceeding relating to the child (to which he is a party) has begun.

¶41   Looking now to the subsection at issue here, it is similarly structured. Section 607's title refers to a "[l]imitation" for a certain type of paternity case:

> § 78B-15-607.   *Limitation*—Child   having   presumed father
>
> (1) Paternity of a child conceived or born during a marriage with a presumed father, as described in [s]ubsection 78B-15-204(1)(a), (b), or (c), may be raised by the presumed father, the mother, or a support

---

[10] We note that section 602 is "[s]ubject to Part 3" and sections 607 and 609. As we explain here, part 3 and section 609 are related, in that section 609 cross-references the deadlines established in part 3 of this chapter.

[11] Subsection 306(1) permits a signatory to a declaration or denial of paternity to rescind that declaration or denial within the earlier of "60 days after the effective date of the declaration or denial," or "the date of notice of the first adjudicative proceeding [relating to the child] to which the signatory is a party."

enforcement agency *at any time before filing an action for divorce or in the pleadings at the time of the divorce of the parents.*

(Emphases added.)

¶42    When viewed together with sections 606 and 609, in which "limitation" clearly relates to the time within which the respective proceedings must be commenced, it becomes apparent that subsection 607(1) follows the same pattern. It functions like sections 606 and 609 to establish when certain persons with standing may commence a proceeding in certain types of cases (or, in the case of section 606, to establish that there are no time limitations). The common threads running through these time limits appear to be estoppel and equitable concerns.

¶43    Mother observes that when a child has a presumed father, the UUPA specifies that "[a] presumption of paternity . . . may only be rebutted in accordance with [s]ection 78B-15-607." *See id.* § 78B-15-204(2).[12] She argues that this means section 607, rather than section 602, governs standing in paternity cases involving a presumed father. She is incorrect.

¶44    It is accurate that the UUPA provides that the presumption of paternity must be rebutted in accordance with section 607. *See id.* But this has nothing to do with standing. Section 607 as a whole directs *when* and *how* paternity may be rebutted.

¶45    We have focused on subsection 607(1) because its meaning is the primary point of dispute before us. But section 607 as a whole is made up of four subsections. As discussed, subsection 607(1) limits when the mother, the presumed father, and a support enforcement agency may commence a proceeding in the event of a divorce. It also establishes other rules applicable only to the mother, the presumed father, and a support enforcement agency in a proceeding under the UUPA. *See id.* § 78B-15-607(1).

¶46    And the other three subsections of section 607 establish guidelines generally applicable to proceedings under the UUPA. *See id.* § 78B-15-607(2)–(4). They are written in the passive voice, so they seemingly apply to all potential petitioners rather than a subset of them.

---

[12] As Mother points out, this provision is also found in Utah Code subsection 30-1-17.2(4).

¶47   Subsection 607(2) states that when the child has a presumed father as described in subsection 204(1)(d),[13] "the presumption may be rebutted at any time if the tribunal determines that the presumed father and the mother . . . neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception."

¶48   Subsection 607(3) outlines how the presumption of paternity may be rebutted: either by (a) "genetic test results that exclude the presumed father"; (b) "genetic test results that rebuttably identify another man as the father . . ."; (c) "evidence that the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception"; or (d) "an adjudication under this part."

¶49   And finally subsection 607(4) states that "[t]here is no presumption to rebut if the presumed father was properly served and there has been a final adjudication of the issue."

¶50   Contrary to Mother's argument that section 607 governs standing under the UUPA when a child has a presumed father, these provisions do not relate to standing. They instruct potential petitioners on how and when they may rebut the presumption of paternity. For example, Castro states that he seeks to rebut Husband's paternity under subsection 607(3)(c) by showing that Husband and Mother did not cohabitate or engage in sexual intercourse during the probable time of conception. Accordingly, he seeks to rebut Husband's paternity in accordance with section 607, as

---

[13] Under subsection 204(1)(d), a man is presumed to be the child's father if

> (d) after the birth of the child, he and the mother of the child married each other in apparent compliance with law, whether or not the marriage is, or could be declared, invalid, he voluntarily asserted his paternity of the child, and there is no other presumptive father of the child, and:
>
> > (i) the assertion is in a record filed with the Office of Vital Records;
> >
> > (ii) he agreed to be and is named as the child's father on the child's birth certificate; or
> >
> > (iii) he promised in a record to support the child as his own.

required by subsection 204(2). This is irrelevant to whether he has standing.

¶51 Ultimately, the specific standing provision of the UUPA grants standing to "a man whose paternity of the child is to be adjudicated." *Id.* § 78B-15-602(3). This seemingly includes Castro. We conclude that subsection 607(1) does nothing to alter section 602. It creates deadlines for the mother, presumed father, and support enforcement agencies in a divorce proceeding, but it is silent as to the others listed in section 602. And we do not interpret this silence to revoke the standing of any of the persons or entities listed in section 602.[14]

¶52 We conclude this is the better reading of the statute. But we need not go further to decide whether this is the plain and unambiguous meaning of the relevant provisions because, even assuming ambiguity existed, we would nevertheless adopt Castro's interpretation due to the serious constitutional issues raised by Mother's reading of the UUPA. *See infra* ¶¶ 53–60.

## II. CONSTITUTIONAL AVOIDANCE

¶53 In this and the companion cases in which we also issue opinions today, alleged fathers have argued that if the UUPA denies

---

[14] We acknowledge the court of appeals' concern that permitting alleged fathers to challenge paternity could "discourag[e] the presumed father from staying married to the mother and assuming parental responsibilities for the child." *R.P.*, 2014 UT App 38, ¶ 24. However, we note that any limitation that subsection 607(1) imposes also applies in cases where there is no longer a marriage to protect. Subsection 607(1) applies when a presumption of paternity arises under subsections 204(1)(a), (b), or (c). Significantly, only subsection 204(1)(a) is limited to a situation where the child is born into an intact marriage. Under subsection 204(1)(b), the marriage was terminated before the child was born. UTAH CODE § 78B-15-204(1)(b) ("[The presumed father] and the mother of the child were married to each other and the child is born within 300 days after the marriage is terminated . . . ."). And subsection 204(1)(c) also includes marriages that have ended. *Id.* § 78B-15-204(1)(c) ("[B]efore the birth of the child, [the presumed father] and the mother of the child married each other in apparent compliance with law, even if the attempted marriage is or could be declared invalid, and the child is born during the invalid marriage or within 300 days after its termination . . . .").

them standing, it is a violation of their procedural and substantive due process rights and their right to equal protection under the state and federal constitutions. *See Hinkle v. Jacobsen*, 2019 UT 72, ¶ 19, --- P.3d --- (arguing that the UUPA violates the due process and equal protection clauses of the federal constitution); *Olguin v. Anderton*, 2019 UT 73, ¶ 18, --- P.3d --- (arguing that the UUPA violates alleged fathers' procedural and substantive due process rights under the state and federal constitutions); *Mackley v. Openshaw*, 2019 UT 74, ¶ 2 n.2, --- P.3d --- (arguing that the UUPA violates alleged fathers' state and federal procedural and substantive due process rights as well as principles of equal protection). In one companion case, the district court ruled that the UUPA violated the alleged father's right to procedural due process. *See Olguin*, 2019 UT 73, ¶¶ 1, 9, 12.

¶54 We note that in *R.P. v. K.S.W.*, the appellant did not raise any constitutional challenges to the UUPA. *See* 2014 UT App 38, ¶¶ 7, 44, 320 P.3d 1084. Accordingly, the court of appeals left "for another day the issue of the constitutional implications of the UUPA's standing limitations where the alleged father has an established relationship with the child." *Id.* ¶ 7.

¶55 However, parties are not required to invoke the canon of constitutional avoidance before we may consider it when interpreting a statute. *State v. Garcia*, 2017 UT 53, ¶ 52, 424 P.3d 171 ("[F]ailure to invoke the constitutional avoidance canon does not deprive us of the ability to employ that canon to interpret the statute."). Indeed, "when statutory language is ambiguous—in that its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis—we generally resort to other modes of statutory construction and seek guidance from legislative history and other accepted sources." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (citation omitted) (internal quotation marks omitted). "The canon of constitutional avoidance is an important tool for identifying and implementing legislative intent." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 23, 332 P.3d 900.

¶56 Under the canon of constitutional avoidance, courts may "reject[] one of two plausible constructions of a statute on the ground that it would raise grave doubts as to [the statute's] constitutionality." *Id.* This practice "reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that [the legislature], like this [c]ourt, is bound by and swears an oath to uphold the Constitution." *Edward J. DeBartolo Corp.*

16

*v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988). Thus, in applying the canon of constitutional avoidance, we presume that "the legislature 'either prefers not to press the limits of the Constitution in its statutes, or it prefers a narrowed (and constitutional) version of its statutes to a statute completely stricken' by the courts." *Carlson*, 2014 UT 24, ¶ 23 (quoting Richard L. Hansen, *Constitutional Avoidance and Anti-Avoidance by the Roberts Court*, 2009 SUP. CT. REV. 181, 186).

¶57    Castro argues that if subsection 607(1) denies standing to alleged fathers, it violates his state and federal constitutional rights to procedural due process, substantive due process, and equal protection.[15] The United States Supreme Court has recognized that the Fourteenth Amendment protects parents' liberty interest "in the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). But the Supreme Court has stated that "the mere existence of a biological link" does not, in and of itself, merit substantial protection under the Due Process Clause. *Lehr v. Robertson*, 463 U.S. 248, 261 (1983). Instead, a biological link offers biological fathers "an opportunity . . . to develop a relationship with his offspring." *Id.* at 262. If a biological father "com[es] forward to participate in the rearing of his child" and "accepts some measure of responsibility for the child's future, he may enjoy the blessings of the parent-child relationship." *Id.* at 261–62 (citation omitted). If he fails to do so, however, his interest in establishing such a relationship is not afforded the same constitutional protections. *See id.* at 262.

¶58    In the adoption context, we have affirmed that due process is satisfied if the Utah Code provides an unwed biological father with "a meaningful chance to preserve his opportunity to develop a relationship with his child." *In re Adoption of T.B.*, 2010 UT 42, ¶ 31, 232 P.3d 1026. The adoption code does this by providing that "an unwed natural father may acquire the right to consent to an

---

[15] The Due Process Clause provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. This guarantee was extended to the states through the Fourteenth Amendment. *Id.* amend. XIV, § 1 ("No state shall . . . deprive any person of life, liberty, or property, without due process of law."). The Equal Protection Clause states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Id.*

adoption by satisfying certain statutory requirements," including initiating a paternity proceeding. *Id.* ¶ 26.

¶59    But a construction of subsection 607(1) that denies standing to all alleged fathers[16] means that they have no opportunity to initiate a paternity proceeding or preserve their opportunity to develop a relationship with their children in any other manner. This interpretation of subsection 607(1) raises questions as to the UUPA's constitutionality. The court of appeals recognized this in *R.P.* when it stated that "constitutional considerations might require further analysis in cases such as this—where the alleged father has an established relationship with the child." 2014 UT App 38, ¶ 7.

¶60    Because of the serious constitutional questions raised by an interpretation of the UUPA that denies standing to all alleged fathers when a presumed father exists, we would be compelled to adopt Castro's interpretation of the statute even if the relevant language were ambiguous.

## CONCLUSION

¶61    We conclude that section 78B-15-602 of the UUPA grants standing to alleged fathers seeking to adjudicate their paternity, and nothing in subsection 607(1) revokes that standing. We overrule *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084. And we reverse the district court's dismissal of Castro's paternity petition and remand to the district court for further proceedings.

———————————

[16] The UUPA appears to address the viability of a claim by an unwed biological father not through its standing provision, but through subsection 104(3), which states that a "court shall, without adjudicating paternity, dismiss a petition that is filed under this chapter by an unmarried biological father if he is not entitled to consent to the adoption of the child under [s]ections 78B-6-121 and 78B-6-122."