*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 72**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

THERESA I. HINKLE,
*Appellee,*

*v.*

KOREY D. JACOBSEN,
*Appellee,*

and

JODY RHORER,
*Intervenor and Appellant.*

No. 20180124
Heard February 22, 2019
Filed December 19, 2019

On Certification from the Court of Appeals

Third District, Salt Lake
The Honorable Andrew H. Stone
No. 124906297

Attorneys:

Theresa I. Hinkle, Salt Lake City, pro se

Colleen K. Coebergh, Salt Lake City, for appellee Korey D. Jacobsen

David Pedrazas, Wade Taylor, Salt Lake City,
for intervenor and appellant

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1    Jody Rhorer appeals the district court's determination that he does not have standing to establish paternity of his biological daughter under the Utah Uniform Parentage Act (UUPA). But the district court also concluded that Rhorer had abandoned his paternity claim entirely, and Rhorer did not challenge this ruling in his opening brief. He has consequently waived the issue, and we dismiss his appeal.

## BACKGROUND

¶2    Theresa Hinkle (Mother) and Korey Jacobsen (Husband) married in 2002 and then separated in 2005. In 2005, Mother and Rhorer engaged in a relationship during which a child was conceived and born. Because Mother and Husband were still married at the time the child was born, Husband is the child's presumed father under the UUPA. *See* UTAH CODE § 78B-15-204(1)(a).

¶3    Mother and Husband began divorce proceedings in 2012. Rhorer intervened in the divorce proceedings, alleging that he is the biological father of the child. He filed multiple motions including one to establish himself as the child's biological father and another for a determination of parentage. He asserted that he could establish his paternity with genetic test results.

¶4    After briefing and proceedings before the commissioner, the commissioner concluded that under the court of appeals' interpretation of the UUPA in *R.P. v. K.S.W.*, 2014 UT App 38, 320 P.3d 1084, Rhorer did not have statutory standing to assert his paternity because the child had a presumed father—Husband—and, under such a circumstance, only the mother and presumed father had standing to challenge paternity under the UUPA.

¶5    However, the commissioner noted the court of appeals' statement in *R.P.* that

> [a]lthough constitutional considerations might require further analysis in cases such as this—where the alleged father has an established relationship with the child—R.P. has not raised a constitutional challenge in the district court or on appeal. Accordingly, we leave for another day the issue of the constitutional implications of the UUPA's standing limitations where

the alleged father has an established relationship with
the child.

*Id.* ¶ 7. In light of this language, the commissioner gave Rhorer the opportunity through a custody evaluation to develop facts relevant to whether the UUPA was unconstitutional as applied to him. The district court adopted the recommendation as a court order. The court order provided that Rhorer had no statutory standing to assert his paternity. Therefore, unless he could show "constitutional standing," he could not move forward with his petition.

¶6   Rhorer proceeded with the custody evaluation in an attempt to establish "constitutional standing." However, he never analyzed the results of the evaluation to make a legal argument that the UUPA was unconstitutional as applied to him. Rather, he filed a motion in which he asked the court to grant him "standing to pursue a claim for time-sharing with the minor child at time of trial."

¶7   At a hearing before the commissioner on the custody evaluation and Rhorer's motion, the commissioner directly requested briefing from Rhorer on any constitutional issues he sought to assert. The commissioner stated, "[I]t's already the law of this case . . . that [Rhorer] wouldn't have standing under the statute were it not for concerns about . . . protecting his constitutional rights, and so I'd like to have something that actually states the parties' positions in writing . . . referring to any facts that are in the file."

¶8   But Rhorer did not do this. Instead, he filed a reply brief in which he asserted he had already addressed the constitutional issues in other pleadings. But while Rhorer did make reference to the due process clause in some of his pleadings, he did not provide any analysis or argument as to why it required he have standing here.

¶9   The commissioner ultimately concluded that

[i]nasmuch as the issue before the Court . . . is whether the strict application of the [UUPA] is unconstitutional as applied to the facts of this case . . . the Commissioner cannot conclude that there exists a compelling reason to grant standing to [Rhorer] to assert his claim of parentage contrary to the provisions of Utah Code Ann. § 78B-15-607.

¶10   In light of the commissioner's recommendation, in a December 21, 2016 order, the district court concluded that Rhorer "lacks standing to assert his parentage claim."

¶11 Rhorer filed a belated objection to the commissioner's recommendation and also moved to set aside the December 21, 2016 order. At a hearing on the objection before the district court, Rhorer's counsel stated that Rhorer was not trying to take "this little girl away from [Husband]," but that he was "asking this Court to give him a relationship with the child." Counsel added, "I'm asking this Court to admittedly break new ground . . . to say '[N]o, why can't you have two fathers?'"

¶12 In a June 1, 2017 memorandum decision denying the motion to set aside, the district court found that Rhorer "asked th[e] Court to craft a remedy whereby he is ultimately granted limited parent-time with [the child], while not actually seeking custody of the child or challenging [Husband's] status as [the child]'s presumed father." The district court explained,

> Ultimately, while Mr. Rhorer may have had a right at the time the biological mother and [Husband] sought a divorce to assert standing to challenge the child's paternity and to rebut [Husband's] paternity (assuming that Mr. Rhorer could mount a constitutional challenge to [Utah Code section 78B-15-607] as applied to him), he has plainly abandoned such a claim at this point.

The court noted that Rhorer had failed to "brief his theories of why Section 607 is unconstitutional as applied to him with adequate specificity to permit intelligent analysis." Finally, the court concluded that Rhorer had not met his burden to demonstrate the statute's unconstitutionality and that Rhorer "[did] not seek to rebut [Husband's] paternity and [did] not seek to establish himself as the legal father" of the child, so he had no standing to challenge Husband's status as presumed father.

¶13 Rhorer responded to the June 1, 2017 memorandum decision by filing a motion for amended findings and a new trial. At a hearing on the motion, Rhorer's counsel walked back the request for dual fatherhood and explained that Rhorer still sought to establish paternity and rebut Husband's status as the child's presumed father.

¶14 The district court denied the motion in a November 14, 2017 memorandum decision. The court outlined the procedural history of the case and explained that "the only issue" was the "conclusion regarding the constitutional implications of the UUPA's standing limitations." The court noted again that "neither

Mr. Rhorer's written briefing nor his counsel's oral argument focused on th[e] constitutional challenge" and that Rhorer's counsel at the time "did not mount a constitutional challenge." The district court then concluded that Rhorer had "accepted [Husband's] parental rights" and "was merely asking this Court to take judicial notice of the bond he had formed with [the child] and find it sufficient to enter into a 'multiple relationship' of fathering."

¶15   Rhorer then moved to set aside the November 14, 2017 memorandum decision under rule 60(b) of the Utah Rules of Civil Procedure. In this motion, for the first time, he briefed a constitutional argument asserting that section 78B-15-607 of the UUPA violates the Equal Protection Clause of the United States Constitution.

¶16   In a January 25, 2018 minute entry, the district court denied Rhorer's motion. The district court reasoned that it seemed as if "Rhorer [wa]s seeking Rule 60(b)(6) relief simply to advance an entirely new legal argument, one that could have been raised and preserved during the multiple instances when this Court and the Commissioners considered the issue of who has standing to challenge a presumed father's paternity under the [UUPA]."

¶17   Rhorer appeals these four district court orders.[1] We exercise jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶18   Standing is generally a mixed question of fact and law "because it involves the application of a legal standard to a particularized set of facts." *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 10, 424 P.3d 95 (citation omitted). However, "the question of whether a given individual or association has standing to request a particular relief is primarily a question of law." *Kearns – Tribune Corp. v. Wilkinson*, 946 P.2d 372, 373 (Utah 1997). We review the district court's "factual determinations" with deference. *Id.* at 373–74. But we give "minimal discretion" to the district court on "determinations of whether a given set of facts fits the legal requirements for standing." *Id.* at 374.

---

[1] Specifically, Rhorer challenges (1) the December 21, 2016 order; (2) the June 1, 2017 memorandum decision; (3) the November 14, 2017 memorandum decision; and (4) the January 25, 2018 minute entry.

## ANALYSIS

¶19    Rhorer's primary argument on appeal is that the UUPA is unconstitutional under the Equal Protection and Due Process Clauses of the United States Constitution. Husband argues that Rhorer did not preserve these arguments in the district court. As the procedural history above makes clear, Husband is correct.

¶20    But in a companion case issued today, *Castro v. Lemus*, we interpret the UUPA to grant standing to "a man whose paternity of the child is to be adjudicated." 2019 UT 71, ¶ 51, --- P.3d ---. This statutory interpretation does not implicate Rhorer's equal protection or due process concerns. Accordingly, Rhorer's failure to preserve his constitutional arguments is moot because the constitutionality of the UUPA is no longer at issue.

¶21    However, we do need to determine whether Rhorer can benefit from any favorable change in the law as articulated in *Castro*. This hinges upon whether he waived any challenge to the district court's determination that he abandoned his paternity claim.

¶22    In its June 1, 2017 memorandum decision, the district court noted that Rhorer had asked it "to craft a remedy whereby he is ultimately granted limited parent-time with [the child], while not actually seeking custody of the child or challenging [Husband's] status as [the child's] presumed father." The court concluded that the "law clearly does not recognize the hybrid role proposed by Mr. Rhorer," and determined that Rhorer no longer sought to rebut Husband's paternity or to establish himself as the child's legal father.

¶23    Further, in its November 14, 2017 memorandum decision, the district court concluded that Rhorer had "accepted [Husband's] parental rights" and "was merely asking [the] Court to take judicial notice of the bond he had formed with [the child] and find it sufficient to enter into a 'multiple relationship' of fathering."

¶24    In these rulings, the district court concluded that Rhorer had abandoned his pursuit of his constitutional standing argument by never briefing it. Further, the court found that Rhorer had abandoned his paternity claim altogether by instead pursuing dual fatherhood and shared parent-time and stating that he did not want to disrupt the relationship between the child and Husband.

¶25    Rhorer does not address these rulings in his briefing to us, other than making a conclusory statement that he did not abandon

his paternity claim.[2] He did respond to [Husband's] argument regarding waiver in his reply brief. But that is insufficient. "When a party . . . raises [an issue] for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court." *State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443; *see also Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."); *Webster v. JP Morgan Chase Bank, NA*, 2012 UT App 321, ¶ 21, 290 P.3d 930 ("The reply brief, however, is reserved for 'answering any new matter set forth in the opposing brief,' not for making an argument in the first instance.").

¶26 Accordingly, we can only hold that Rhorer waived any challenge to the district court's conclusion that he had abandoned his paternity petition.

## CONCLUSION

¶27 The district court found that Rhorer abandoned his paternity claim, and Rhorer did not challenge that finding on appeal. We therefore conclude that Rhorer waived any claim to challenge Husband's presumed paternity. Accordingly, we dismiss his appeal.

---

[2] Specifically, Rhorer stated in his opening brief that he "never abandoned his claim to rebut [Husband's] paternity in this matter and to seek custody of the minor child." But this conclusory statement does not constitute a challenge to the district court's repeated, specific conclusion that he had abandoned his paternity claim.

Rhorer did "technically appeal[]" the orders containing the district court's conclusions about abandonment, but "technical compliance is not enough." *Utah Physicians for a Healthy Env't v. Exec. Dir. of the Utah Dep't of Envtl. Quality*, 2016 UT 49, ¶ 18, 391 P.3d 148.