**2021 UT 48**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

CATHY MCKITRICK,
*Appellant,*

*v.*

KERRY GIBSON, CITY OF OGDEN, AND OGDEN CITY RECORDS REVIEW
BOARD,
*Appellees.*

No. 20190811
Heard March 5, 2021
Filed August 19, 2021

On Appeal of Interlocutory Order

Second District, Weber
The Honorable Noel S. Hyde
No. 180906947

Attorneys:

Jeffrey J. Hunt, David C. Reymann, Jeremy M. Brodis, Salt Lake
City, for appellant

Peter Stirba, Valerie Wilde, Salt Lake City, for appellee Kerry
Gibson
Stephen F. Noel, Ogden, for appellee Ogden City
Clinton R. Drake, Bountiful, for appellee Ogden City Records
Review Board

JUSTICE PETERSEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE
HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

### INTRODUCTION

¶1 Cathy McKitrick, a freelance journalist, sought
government records related to an investigation into alleged
official misconduct by Kerry Gibson, a former Weber County
Commissioner. The Ogden City Records Review Board granted
her records request. But Gibson petitioned for judicial review of

that decision. In the district court, McKitrick moved to dismiss. She argued that Gibson lacks standing under the Utah Government Records Access and Management Act to seek judicial review of an appeals board's access decision. Gibson opposed, arguing that his petition should proceed—statutory standing aside—because he meets the tests for traditional and public interest standing.

¶2    This case therefore poses the question contemplated by the concurrence in *Haik v. Jones*: May a statutory claimant who lacks statutory standing proceed on the basis of traditional or alternative standing? 2018 UT 39, ¶ 41 & n.11, 427 P.3d 1155 (Lee, A.C.J., concurring in part and concurring in the judgment). We did not answer that question in *Haik*, but we do so now. And we hold that the answer is no. A statutory claimant must have statutory standing, and the presence of traditional or alternative standing will not cure a statutory standing deficiency. We therefore reverse the district court's interlocutory order denying McKitrick's motion to dismiss and remand for dismissal of Gibson's petition for judicial review.

## BACKGROUND[1]

¶3    In late 2017, then Weber County Commissioner Kerry Gibson was accused of misusing public resources for personal benefit, including, among other things, misappropriating county equipment to make improvements to the Gibson family farm. Shortly thereafter, the Ogden City Police Department opened an investigation into the allegations against Gibson and subsequently referred the matter to Davis County.[2] The Davis County Attorney's Office found no illegality related to the work done on the farm and insufficient evidence to support the other allegations. So Davis County declined to bring formal charges against Gibson.

―――――――――――――――――――――――――――――――――――――――

[1] "On appeal from a motion to dismiss, we . . . accept the factual allegations in the complaint as true and view all reasonable inferences from them in the light most favorable to the plaintiff." *Castro v. Lemus*, 2019 UT 71, n.3, 456 P.3d 750 (citation omitted). Accordingly, we recite the facts as alleged in Gibson's petition for judicial review.

[2] The matter was referred to Davis County "because the Weber County Attorney's Office had a conflict of interest."

¶4    After Davis County closed its investigation, McKitrick filed a records request under the Utah Government Records Access and Management Act (GRAMA), UTAH CODE §§ 63G-2-101–901, seeking "the contents and findings of the police investigation." Gibson objected. And Ogden City denied McKitrick's request. The City determined that "the public's interest in disclosure does not outweigh the City's interest in classifying [the] records as private and protected," and it classified the records accordingly.[3]

¶5    As permitted by GRAMA, McKitrick appealed the denial to the Ogden City Chief Administrative Officer. *See id.* § 63G-2-401(1). The chief administrative officer affirmed the decision below, concluding that the records had been properly classified by Ogden City as private and protected under GRAMA.

¶6    McKitrick again appealed, this time to the Ogden City Records Review Board (Review Board), a local appeals board established by Ogden City as authorized by GRAMA. *See id.* § 63G-2-701(5)(c). Ogden City was the named respondent in the appeal. At the Review Board hearing, Ogden City argued against disclosure because, among other things, releasing the records would compromise the identities of other persons involved in the investigation of Gibson.

¶7    Although Gibson was not an official party to the Review Board proceedings, he had the opportunity to be heard at the hearing through his attorney. Gibson argued that disclosure of the records would constitute a "clearly unwarranted invasion of [his] personal privacy" because, as evidenced by the decision of the Davis County Attorney's Office not to file charges, the allegations underlying the investigation proved "unsubstantiated."

¶8    After reviewing the records and "carefully considering the interests favoring access and the interests favoring restriction," the Review Board reversed the denial and ordered release of the records with limited redactions. In making its decision, the Review Board reasoned that while the names of any complainants or witnesses were properly classified as private under GRAMA subsection 302(2)(d), "the public's right [to] access

---

[3] Specifically, Ogden City classified the records as private pursuant to GRAMA subsection 302(2)(d) and protected pursuant to GRAMA subsections 305(10)(d)–(e).

and to know the information regarding the investigation of Mr. Gibson as a public official and the alleged misuse of public funds outweigh any interest in restricting the records." In its order authorizing release, the Review Board noted the right of "any party" to appeal the decision to the district court as governed by GRAMA sections 701(6) and 404.

¶9 Respondent Ogden City elected not to appeal the decision. And as the prevailing party, McKitrick did not appeal the decision. But Gibson, claiming standing under Ogden City Municipal Code subsection 4-5-25(G)(3) and section 4-5-25(H) (2018),[4] filed a petition for judicial review. In his petition, Gibson argued that disclosure of the records "would constitute a 'clearly unwarranted invasion of personal privacy' . . . not outweighed by any public interest" because, among other reasons, release of the records could cause significant personal and professional harm. Gibson's petition named only Ogden City and the Review Board as respondents.

¶10 McKitrick moved to intervene. She subsequently filed a motion to dismiss Gibson's petition, alleging, in relevant part, that because Gibson is neither a "political subdivision" nor a "requester," he lacks standing under GRAMA to petition the district court for review of the Review Board's decision. Gibson opposed, claiming that under our precedent, his satisfaction of the requirements for traditional or public interest standing renders "a[ny] lack of statutory standing . . . immaterial."

¶11 Following oral argument, the district court concluded that in light of "ambiguities in GRAMA" and constitutional concerns surrounding the right to privacy, "a person who asserts

---

[4] Gibson cited—and we cite herein—to the portions of the Ogden City Municipal Code in effect in 2018, when Gibson filed his petition for judicial review. Ogden City Municipal Code subsection 4-5-25(G)(3) (2018) provides that "any party to the appeal may appeal the decision of the records review board to district court . . . ." But McKitrick and Ogden City were the only named parties to the Review Board appeal. *See supra* ¶¶ 6–7. And Ogden City Municipal Code section 4-5-25(H) (2018) permits appeals to the district court from a final decision of a local appeals board only "in accordance with [GRAMA] and the Utah rules of civil procedure." *See infra* ¶ 42.

a privacy interest in records has standing to appeal the decision of a local appeals board granting access to those records." It therefore denied McKitrick's motion to dismiss.

¶12 We granted leave to McKitrick to appeal from the district court's interlocutory order denying her motion to dismiss.

¶13 We exercise jurisdiction under Utah Code section 78A-3-102(3)(j).

## STANDARDS OF REVIEW

¶14 "A ruling on a motion to dismiss presents a legal question that we review for correctness, affording no deference to the district court's decision." *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600. Likewise, "[t]he interpretation . . . of a statute [is a] question[] of law that we review for correctness." *Castro v. Lemus*, 2019 UT 71, ¶ 11, 456 P.3d 750 (citation omitted). And while standing generally presents a mixed question of law and fact "because it involves the application of a legal standard to a particularized set of facts," the question of whether a specific individual has standing to assert a claim is primarily a question of law. *Hinkle v. Jacobsen*, 2019 UT 72, ¶ 18, 456 P.3d 738 (citation omitted). We review factual findings with deference, but "we give minimal discretion to the district court on determinations of whether a given set of facts fits the legal requirements for standing." *Id.* (citation omitted) (internal quotation marks omitted).

## ANALYSIS

¶15 McKitrick argues that Gibson lacks standing under the plain language of GRAMA. And she contends that because Gibson is a statutory claimant—as he is proceeding under the mechanism established in GRAMA for judicial review of a local appeals board decision—he must have statutory standing to proceed and may not resort to any other form of standing to gain access to the courts. Gibson disagrees. He argues both that he has statutory standing under GRAMA and that because he meets the requirements for traditional standing, "he [nonetheless] need not rely upon the statute for authority" to judicially challenge the records' release.[5]

---

[5] In the alternative, Gibson asserts that he has public interest standing, also commonly referred to as "alternative standing." We

(continued . . .)

¶16  The Utah Legislature has seen fit to establish, under the rubric of GRAMA, a process for appellate review of governmental entities' GRAMA-related decisions. And despite his status as the subject of the records here, we conclude that Gibson is not within the scope of those authorized by the legislature to seek such review. Further, we hold that because Gibson lacks standing under the plain terms of the statute (GRAMA) through which he stakes his claim, that claim may not proceed even though Gibson has traditional standing.

## I. STATUTORY STANDING

¶17  "[I]n Utah, as in the federal system, standing is a [threshold] jurisdictional requirement." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 11, 299 P.3d 1098 (first alternation in original) (citation omitted). And it is axiomatic that where the right of action is one created by statute, "the law creating the right can also prescribe the conditions of its enforcement." *State Farm Mut. Auto. Ins. Co. v. Clyde*, 920 P.2d 1183, 1185 (Utah 1996) (quoting *Parmley v. Pleasant Valley Coal Co.*, 228 P. 557, 560 (Utah 1924)).

¶18  Gibson is a statutory claimant, relying on provisions of GRAMA to seek judicial review of an appeals board's access decision. Accordingly, we first ask whether Gibson meets the requirements for standing under GRAMA—in other words, whether he is one of the persons the statute allows to seek judicial review of appeals board decisions regarding access to government records.

¶19  "When interpreting a statute, our primary objective is to ascertain the intent of the legislature." *Castro v. Lemus*, 2019 UT 71, ¶ 17, 456 P.3d 750 (citation omitted) (internal quotation marks omitted). Because "[t]he best evidence of the legislature's intent is the plain language of the statute itself," we look first to the statutory text. *Id.* (alteration in original) (citation omitted). But we do not interpret statutory text in isolation. *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 12, 248 P.3d 465. Instead, we "determine the meaning of the text given the relevant context of the statute (including, particularly, the structure and language of the statutory scheme)." *Id.* In doing so, we presume, "absent a

---

need not reach the merits of this argument, however, because (1) Gibson's lack of statutory standing is dispositive regardless of whether he has traditional or alternative standing, and (2) there is no dispute that Gibson has traditional standing here.

contrary indication, that the legislature used each term advisedly." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863 (citation omitted). "When the meaning of [a] statute can be discerned from its language, no other interpretive tools are needed." *Id.* ¶ 15 (alteration in original) (citation omitted) (internal quotation marks omitted).

¶20 GRAMA establishes a process through which an individual may request access to a government record. UTAH CODE § 63G-2-204(1). And when a governmental entity denies such a request, GRAMA establishes a process to appeal that decision. *Id.* §§ 63G-2-401–404, -701(5)–(6). We look at the specific provision at issue here—subsection 701(6)(a), which provides for appeals from access decisions of a local appeals board—within the context of this overarching appellate scheme. We conclude that when reading subsection 701(6)(a) in context, it is clear that only a political subdivision or a requester may appeal the decision of a local appeals board. And Gibson is neither a political subdivision nor a requester.

*A. The GRAMA Appeals Process[6]*

1. The Initial Record Request to the Governmental Entity

¶21 The process of requesting a government record through GRAMA begins with a record request to a governmental entity. UTAH CODE § 63G-2-204(1)(a). Here, McKitrick requested the investigative records through a GRAMA request to the Ogden Police Department. Ogden City responded to her request and denied it.

---

[6] We address only who has standing to appeal *access* decisions of a local appeals board to the district court. The statute provides a process for appealing other GRAMA-related decisions, such as a governmental entity's classification or designation of a record as public, private, controlled, protected, or exempt from disclosure. UTAH CODE § 63G-2-401(8). But these provisions are not at issue here. GRAMA also contains provisions that are specific to business confidentiality claimants, which we also do not address. *See, e.g., id.* §§ 63G-2-401(4)(a), -404(3). And finally, our analysis is specific to petitions for judicial review of a local appeals board's decision. We do not address appeals that proceed to or from the State Records Committee.

¶22 When a governmental entity denies a record request, GRAMA establishes a process for appealing that decision. This process is generally laid out in Part 4 of GRAMA. *See id.* §§ 63G-2-400.5–406. However, because Ogden City—the governmental entity in control of the record here—is a "political subdivision,"[7] Part 7 of GRAMA is relevant. *See id.* §§ 63G-2-103(11)(a)(v), -701. Part 7 permits political subdivisions to "adopt an ordinance or a policy applicable throughout its jurisdiction relating to information practices including classification, designation, *access*, *denials*, segregation, *appeals*, management, retention, and amendment of records." *Id.* § 63G-2-701(2)(a) (emphases added).

¶23 Ogden City has chosen to enact its own ordinances related to information practices pursuant to Part 7. *See* OGDEN CITY, UTAH MUN. CODE § 4-5-1(A)–(B) (2018). So here we review the relevant provisions in both Part 4 and Part 7 of GRAMA.

2. Appeal of a Governmental Entity's Denial to the Chief Administrative Officer

¶24 If the governmental entity *grants* a records request, GRAMA provides no mechanism to appeal that decision. However, if the governmental entity *denies* a record request, as did Ogden City, GRAMA permits the "*requester*" or an "*interested party*" to appeal the "access denial" to the governmental entity's designated chief administrative officer. UTAH CODE § 63G-2-401(1)(a) (emphases added). In Part 7, GRAMA requires a political subdivision to "include a process for a *requester* or *interested party* to appeal an access denial to a person designated by the political subdivision as the chief administrative officer" for such purposes. *Id.* § 68G-2-701(5)(b) (emphases added).

¶25 Both "requester" and "interested party" are defined terms. *See id.* § 63G-2-701(1)(c) (referencing *id.* § 63G-2-400.5). A requester is "a person who submits a record request to a governmental entity." *Id.* § 63G-2-400.5(7). Here, that is McKitrick.

---

[7] GRAMA itself does not define "political subdivision," but other sections of Title 63G define the term similarly, as "any county, city, town . . . or other governmental subdivision or public corporation." *Id.* § 63G-7-102(8); *see also id.* §§ 63G-9-201(1)(a), -22-102(1). Under any of these definitions, Ogden City is a political subdivision.

¶26 And an "interested party" is a person, other than the requester, who is "aggrieved" by the *denial* of a record request. *Id.* § 63G-2-400.5(3).[8] Notably, the statutory definition does not include a person who is aggrieved by the *grant* of a record request. So Gibson is not an "interested party" under GRAMA.

¶27 Because Ogden City denied McKitrick's request, she appealed the access denial to Ogden City's chief administrative officer for GRAMA appeals. And the chief administrative officer affirmed the city's access denial.

3. Appeal of a Chief Administrative Officer's "Appellate Affirmation" of the Governmental Entity's Denial

¶28 If a chief administrative officer reverses the governmental entity's decision to deny access to a record, and thereby grants the record request, GRAMA does not provide an avenue to appeal the decision. But if the chief administrative officer affirms the governmental entity's denial of the request (an "appellate affirmation"), GRAMA allows the requester to appeal the decision to the State Records Committee, a local appeals board, or the district court through a petition for judicial review. *Id.* § 63G-2-402(1)(a)–(b). But where, as here, the governmental entity is a political subdivision that has established its own local appeals board pursuant to Part 7, GRAMA requires any appeal of a chief administrative officer's decision to go to the local appeals board. *Id.* § 63G-2-701(5)(c)(iii).

¶29 It is notable that at this juncture, GRAMA distinguishes between the appellate rights of the requester and an interested party. While a requester has three avenues of appeal (unless the governmental entity is a political subdivision), the statute does not give an interested party the same options. Rather, it directs an

---

[8] An "interested party" is "a person, other than a requester, who is aggrieved by an access denial or an appellate affirmation . . . ." *Id.* § 63G-2-400.5(3). Both an "access denial" and an "appellate affirmation" refer to denials of record requests. An "access denial" means a governmental entity's initial denial of a record request, in whole or in part. *Id.* § 63G-2-400.5(1). And an "appellate affirmation" is "a decision of a chief administrative officer, local appeals board, or State Records Committee *affirming an access denial*." *Id.* § 63G-2-400.5(2) (emphasis added).

interested party to appeal an appellate affirmation to the State Records Committee. *Id.* § 63G-2-402(3).

¶30  Here, Ogden City's chief administrative officer affirmed the city's access denial. So GRAMA provided McKitrick the right to appeal that decision to the Ogden City Records Review Board. And the Review Board rejected the chief administrative officer's decision and granted McKitrick's records request. It is the appeal of this decision—specifically, Gibson's petition for judicial review of the Review Board's decision to grant McKitrick's records request—that is before us.

4. Appeal of a Local Appeals Board Decision

¶31  GRAMA subsection 701(6)(a) governs this specific situation. It states that "[a] *political subdivision* or *requester* may appeal an appeals board decision . . . by filing a petition for judicial review with the district court." *Id.* § 63G-2-701(6)(a)(ii) (emphases added). Notably, this is the first procedural stage at which GRAMA provides for an appeal of a grant—in addition to a denial—of a record request.[9] And it allows either a "political subdivision" or a "requester" to appeal the board's decision. As discussed, both "political subdivision" and "requester" are defined terms. *See supra* ¶¶ 22 n.7, 25. The "requester" here is McKitrick. And Ogden City is the "political subdivision" in this case.

¶32  McKitrick, as the prevailing party, had no need to appeal. Ogden City chose not to appeal. And GRAMA does not provide any other person or entity with the right to appeal the Review Board decision.

*B. Gibson's Statutory Standing*

¶33  Gibson, however, did appeal. Gibson agrees that he is not a political subdivision or requester under GRAMA and is therefore not "specifically enumerated as the type of appellant the statute contemplates will seek judicial review." But he argues that GRAMA nonetheless grants him standing for the following reasons.

---

[9] Section 701(6) states that an appeals board "decision" may be appealed. *Id.* § 63G-2-701(6)(a). Unlike other sections of GRAMA, it does not specify that only denials may be appealed. *See supra* ¶ 24.

¶34   First, Gibson notes GRAMA's recognition of "the right of privacy in relation to personal data gathered by governmental entities." UTAH CODE § 63G-2-102(1)(b). He then argues that as the subject of the investigative records at issue, he has standing as an "interested party" under the statute because his right to privacy is at stake.[10]

¶35   This is incorrect. As discussed, Gibson is not an interested party under the statute. *See supra* ¶ 26. And while it is true that GRAMA recognizes the importance of both "the public's right of access to information concerning the conduct of the public's business" and "the right of privacy in relation to personal data gathered by governmental entities," UTAH CODE § 63G-2-102(1), this recognition does not amount to a grant of standing. *See Wash. Cnty. Water Conservancy Dist. v. Morgan*, 2003 UT 58, ¶¶ 8–10, 82 P.3d 1125 (concluding that "broad statements of purpose" are "insufficient to establish statutory standing" and declining to infer from such statements a legislative intent to confer statutory standing).[11]

¶36   Gibson next asserts that the language in subsection 701(6)(a) granting political subdivisions and requesters the right to appeal is "not exclusive." So he argues that while the

_____

[10] Gibson has not made any claim that the relevant GRAMA provisions are unconstitutional as applied to him. The only question before us is whether Gibson has standing to pursue his GRAMA petition for judicial review.

[11] We note that GRAMA protects individuals whose data appears in government records in other ways. For example, GRAMA allows any person "aggrieved by a governmental entity's classification or designation determination" to appeal the classification or determination. UTAH CODE § 63G-2-401(8). And it directs decisionmakers at various stages of the record request and appeals processes to weigh the interests favoring disclosure against the interests favoring nondisclosure. *See, e.g.*, *id.* § 63G-2-401(6) (consideration by a chief administrative officer); *id.* § 63G-2-403(11)(b) (consideration by the State Records Committee); *id.* § 63G-2-404(7)(a) (consideration by the district court). However, the statute stops short of granting standing to appeal an access decision on the basis of a person's privacy interests.

subsection does not explicitly include someone in his circumstance, it does not necessarily exclude him either.

¶37 This is a misreading of the statute. Because "we presume, 'absent a contrary indication, that the legislature used each word advisedly,'" *Marion Energy*, 2011 UT 50, ¶ 14 (citation omitted), we consequently anticipate "that the expression of one [term] should be interpreted as the exclusion of another." *Bagley v. Bagley*, 2016 UT 48, ¶ 10, 387 P.3d 1000 (alteration in original) (citation omitted). "We therefore seek to give effect to omissions in statutory language by presuming all omissions to be purposeful." *Marion Energy*, 2011 UT 50, ¶ 14.

¶38 The associated canon of construction—*expressio unius est exclusio alterius* (*expressio unius*)—holds that "to express or include one thing implies the exclusion of the other, or of the alternative." *Expressio unius est exclusio alterius*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also Pulham v. Kirsling*, 2019 UT 18, ¶ 30 n.9, 443 P.3d 1217 (citing the above definition). And while canons of construction "are not formulaic, dispositive indicators of statutory meaning," they serve as "tools that guide our construction of statutes in accordance with common, ordinary usage and understanding of language—in this instance, the expectation that legislators typically use language advisedly and tend not to speak in superfluous terms." *Olsen*, 2011 UT 10, ¶ 19.

¶39 On this basis—and absent any contrary indication in the statutory text itself—we assume that the legislature used "requester" and "political subdivision" advisedly in crafting GRAMA's appellate review language, and to the exclusion of other persons or entities that might have an interest in appealing a local review board's access decision. *Cf. In re Gestational Agreement*, 2019 UT 40, ¶ 20, 449 P.3d 69 (assuming the term "mother" in the pertinent statute was used advisedly and to the exclusion of words like "father" or "parent").

¶40 Of course, the legislature's inclusion of specific terms does not always exclude others. In general,

> [t]he inclusion of specific matter in a statute implies the exclusion of something else "only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the statute."

*Cullum v. Farmers Ins. Exch.*, 857 P.2d 922, 924 (Utah 1993) (citation omitted). For example, where a statute sets forth a list of considerations to be included among relevant facts a court might consider, such a list is "*exemplary*—an indication of some of the considerations that may be relevant," but not all. *State v. Wadsworth*, 2017 UT 20, ¶ 8, 393 P.3d 338. When specific terms are not intended to be exclusive, we expect to see textual indicators such as "for example" or "including," or for the context of the provision to otherwise suggest that it is not meant to be exhaustive. *See, e.g.*, *Samantar v. Yousuf*, 560 U.S. 305, 317 (2010) ("[U]se of the word 'include' can signal that the list that follows is meant to be illustrative rather than exhaustive."); *Graves v. N.E. Servs., Inc.*, 2015 UT 28, ¶ 53, 345 P.3d 619 ("In statutory cases far and wide, [the term 'including'] is routinely construed as introducing a non-exclusive, exemplary list.").

¶41 But subsection 701(6)(a) does not bear such a reading. It says simply that: "A political subdivision or requester may appeal an appeals board decision . . . by filing a petition for judicial review with the district court." UTAH CODE § 63G-2-701(6)(a)(ii). There is no textual suggestion that the terms "political subdivision" and "requester" are meant to be merely illustrative or otherwise non-exclusive. And as our discussion of this provision and the other relevant GRAMA appeals provisions makes clear, the legislature carefully chose which access decisions were subject to appeal and which persons could pursue those appeals. Accordingly, we reject Gibson's assertion that the legislature's specific identification of these two terms in subsection 701(6)(a) does not limit appellate standing accordingly.

¶42 Gibson's final argument is that the Ogden City Municipal Code grants him standing to petition for judicial review of the Review Board's decision. However, the provision he cites does not grant broader standing than GRAMA subsection 701(6)(a). Rather, it explicitly affirms that appeal of a final decision of the Review Board "may be made to the district court, in accordance with [GRAMA] and the Utah rules of civil procedure." OGDEN CITY, UTAH, MUN. CODE § 4-5-25(H) (2018). And as we have explained, GRAMA permits only a political subdivision or the requester to appeal a decision of the Review Board. *See* UTAH CODE § 63G-2-701(6)(a).

¶43 Accordingly, we conclude that under the plain language of GRAMA, only a requester of a record—in this case, McKitrick—or a political subdivision—here, Ogden City—may

petition for judicial review of a local appeals board decision in the district court. *See id.* Gibson, who is neither a requester nor a political subdivision, therefore lacks statutory standing in this case.

## II. TRADITIONAL STANDING

¶44 We next turn to whether, despite lacking statutory standing, Gibson may nonetheless proceed as a statutory claimant because he has traditional standing. Neither party—nor the court below—contests that Gibson in fact possesses traditional standing. To establish traditional standing, "the petitioning party must allege that it has suffered or will suffer[ ] some distinct and palpable injury that gives [it] a personal stake in the outcome of the legal dispute." *Utah Chapter of Sierra Club v. Air Quality Bd.*, 2006 UT 74, ¶ 19, 148 P.3d 960 (alterations in original) (citation omitted) (internal quotation marks omitted). As the subject of the records, Gibson clearly meets this test.

¶45 But the parties disagree on whether the presence of traditional standing can cure Gibson's lack of statutory standing in this case. McKitrick argues that individuals like Gibson, who assert "some interest in government records [but] are not within the terms of the statute," have no right to seek judicial review of a local appeals board decision. Gibson argues that a plaintiff without statutory standing may in the alternative demonstrate that he meets the test for traditional or alternative standing[12] and proceed on those grounds.[13]

---

[12] *See supra* ¶ 15 n.5, for why we need not address Gibson's alternative standing claim.

[13] Gibson cites *National Parks & Conservation Ass'n v. Board of State Lands*, 869 P.2d 909 (Utah 1993); *Utah Chapter of the Sierra Club v. Utah Air Quality Board*, 2006 UT 74, 148 P.3d 960; and *Morra v. Grand County*, 2010 UT 21, 230 P.3d 1022, for the proposition that "Utah case law shows a wide variety of circumstances under which traditional standing has been granted despite a statutory limitation." But in *National Parks* and *Sierra Club*, we looked solely at whether petitioners had constitutional standing under the traditional or alternative tests. *See Nat'l Parks*, 869 P.2d at 913–14 (applying the tests for and articulating the rationale behind the traditional and alternative standing doctrines); *Sierra Club*, 2006 UT 74, ¶¶ 17–44 (same). And *Morra*, like *Cedar Mountain*, *see infra*

(continued . . .)

¶46   While we have never squarely held that a petitioner who lacks statutory standing for a statutory claim may nevertheless proceed on traditional or alternative standing grounds, our dicta in past cases may have contributed to confusion in this area. In *Cedar Mountain Environmental, Inc. v. Tooele County ex. rel. Tooele County Commission*, 2009 UT 48, 214 P.3d 95, for example, we analyzed whether the petitioners met the test for alternative standing in spite of previously holding that they had adequately alleged statutory standing.[14] But because the alternative standing analysis was unnecessary to our decision in that case, any language in *Cedar Mountain* "arguably suggest[ing] that a plaintiff could overcome a lack of statutory standing by satisfying the elements of 'alternative' constitutional standing," *Haik v. Jones*, 2018 UT 39, ¶ 41 n.11, 427 P.3d 1155 (citation omitted) (Lee, A.C.J., concurring in part and concurring in the judgment), was merely dicta, and we disavow it here.

¶47   Gibson's reliance on the language in *Washington County Water Conservancy District v. Morgan*, 2003 UT 58, 82 P.3d 1125, is similarly misplaced. Gibson cites *Washington County* for the proposition that a "plaintiff who has not been granted standing to sue by statute must either show [traditional standing] or meet one of the two exceptions to standing recognized in cases involving 'important public issues.'" (Quoting *id.* ¶ 17.) But *Washington County* involved a statute that granted a right to judicial review that was "consistent with our traditional standing requirement," blurring the distinction between the statutory and constitutional standing analysis. *Id.* ¶ 14. Moreover, this language—like that in

_____

¶ 46 n.14, addressed a statutory right of review that we found "equivalent in scope to our traditional judicial test for standing." *Morra*, 2010 UT 21, ¶ 15 (citation omitted). We therefore did not grapple in any of these cases with the question presented here—whether traditional standing may cure a lack of statutory standing where the petitioner seeks a statutory remedy.

[14] Because *Cedar Mountain* featured a statutory right of review that was coextensive with the traditional standing test, "we rel[ied] on traditional standing case law to interpret the statutory requirement." *See Cedar Mountain Env't, Inc. v. Tooele Cnty. ex rel. Tooele Cnty. Comm'n*, 2009 UT 48, ¶ 9, 214 P.3d 95.

*Cedar Mountain*—is dicta, because we found all three types of standing lacking. *See id.* ¶¶ 5–28.

¶48 The facts in *In re Questar Gas Co.*—in which we implicitly recognized the principle that statutory standing is mandatory for statutory claims—are more apposite to the facts here. 2007 UT 79, 175 P.3d 545. In *In re Questar*, we dismissed a petition for judicial review of an agency decision for lack of statutory standing even though the dismissed petitioners would have satisfied the test for traditional standing. *Id.* ¶ 57 ("[A]lthough [petitioners] are 'aggrieved' by the increase to their gas bill resulting from the [agency's] decision, they lack appellate standing because they . . . do not fall within the classes of persons to whom standing is granted [under the statute]."). And we now make explicit what *In re Questar Gas* made implicit: traditional or alternative standing cannot excuse a lack of statutory standing where the petitioner is a statutory claimant. In other words,

> If a plaintiff is asserting a statutory claim[,] the constitutional standing question arises if and only if the plaintiff has statutory standing. If the plaintiff is not within the class of parties that the legislature has authorized to file suit, it does not matter whether that plaintiff could identify some sort of "distinct and palpable injury" or a basis for "public interest" standing.

*Haik*, 2018 UT 39, ¶ 41 (Lee, A.C.J., concurring in part and concurring in the judgment).

¶49 Accordingly, because GRAMA does not grant standing to Gibson, he cannot proceed under that statute.

## CONCLUSION

¶50 We hold that a statutory claimant may not overcome a lack of statutory standing by satisfying the elements of some other doctrine of standing. Here, Gibson lacks standing under GRAMA to seek judicial review of the Review Board's decision to disclose Ogden City's records to McKitrick. And because he lacks standing under the plain language of the statute under which he is a claimant, Gibson may not proceed on traditional or alternative standing grounds. We therefore reverse the order of the district court denying McKitrick's motion to dismiss and remand for the dismissal of Gibson's petition.